Yomaira **GUTIERREZ, etc., et al., Plaintiffs,**

v.

**CITY OF HIALEAH, et al., Defendants.**

No. 88–201–Civ–Eps.

United States District Court, S.D. Florida, Miami Division.

Oct. 31, 1989.

Norman Funt, Miami, for plaintiffs.

Gregory A. Veitor, Paul G. Cantero, III, Miami, for defendants.

## MEMORANDUM OPINION AND ORDER IMPOSING RULE 11 SANCTIONS

SPELLMAN, District Judge.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND SANCTIONS

THIS CAUSE comes before the Court upon Defendants', City of Hialeah, Raul Martinez, C.B. Say, and Kent Hart (hereinafter referred collectively as "Defendants"),[1] Motion for Attorneys' Fees and Sanctions filed with this Court on July 17, 1989.[2] For the reasons set forth below, this Court grants in part and denies in part Defendants' Motion.

### BACKGROUND

This action arose from a shootout in which Defendant Kent Hart, a City of Hialeah police officer, shot and killed Julio Guitierrez (hereinafter "Decedent"). On February 15, 1988, the Decedent drove to a Hialeah apartment complex located at 2690 West 8th Avenue, in Hialeah, Dade County, Florida, searching for his girlfriend.

Drunk from drinking most of the day with his father and friend, the Decedent began to repeatedly honk his car horn when a Mr. Bienvenido Pacheco, a resident of the apartment complex, came out to confront him. The two argued and the Decedent threatened Pacheco and then left. Pacheco's girlfriend called the police.

---

**1.** Defendant City of Hialeah is a municipal corporation in the State of Florida, and on the date of the shooting from which this action arises, employed: Defendant Kent Hart as a police officer; Defendant C.B. Say as Chief of Police and Director of the City of Hialeah Police Department; and Defendant Raul Martinez as Mayor of the City of Hialeah.

**2.** Defendants seek attorneys' fees and costs pursuant to Rule 11, Fed.R.Civ.P., and 42 U.S.C. § 1988. Because issues raised in Defendants' Rule 11 motion parallel and are dispositive of issues raised in their claim for attorneys' fees under Section 1988, this Court shall limit its discussion to Defendants' entitlement to attorneys' fees and costs pursuant to Rule 11.

The Decedent returned to his home, grabbed a shotgun, and returned to the apartment complex. Officer Hart was dispatched and arrived at the apartment complex where he heard people shouting that there was a man in the complex parking lot with a shotgun. Hart called for assistance.

Noticing the Decedent, Hart identified himself as a police officer and ordered the Decedent to drop the shotgun. Plaintiffs do not dispute that the Decedent possessed a shotgun. However, Plaintiffs maintain that there is conflicting evidence as to what occurred next.

According to Defendants,[3] the Decedent turned, looked right at Hart, and fired the shotgun at him. Hart, and Pacheco, who had been standing next to Hart, ducked behind a car. Hart fired his service revolver at the Decedent. The Decedent fired again. Hart fired a second shot, hitting and killing the Decedent. Defendants maintain that police reports, sworn statements, photographs, the medical examiner's report, spent shotgun shells, and other physical evidence corroborate this version of the facts, and confirm that Officer Hart acted in self-defense of himself and others.

Plaintiffs maintain that two shells were fired from the Decedent's shotgun, and that there are statements indicating that the Decedent only fired once and that subsequent to his death, his father arrived at the scene, picked up the shotgun and fired a shot in anger. There is also evidence that the Decedent only fired one shot into the air, ducked behind a corner of a building, and was shot when he reappeared. In addition, there is testimony that someone yelled "Stop shooting" in Spanish immediately before shots were fired. Based on this evidence, Plaintiffs argue that it is conceivable that the Decedent fired his shotgun, hid behind the corner of a building, yelled "Stop shooting," and was shot by Officer Hart when he reappeared.

Plaintiffs also maintain that there is evidence to suggest that the Decedent never fired the shotgun. According to police reports, the Decedent's father may have fired the shotgun twice subsequent to his son's death. Furthermore, police reports suggest that there was a third gunman shooting from a second story balcony of the apartment building who fled the scene.

Finally, Plaintiffs maintain that on March 5, 1986, the Decedent's father stated that his son stood behind the building and fired the shotgun into the air straight upwards. As the father got closer to his son, the Decedent put his head outside the building wall and told his father to move back so he would not get shot, whereupon the Decedent was shot in the head and fell to the ground.

Pursuant to standard policy, the Dade County State Attorney's Office, through Assistant State Attorney Malcolm Purlow, thoroughly investigated the shooting, culminating in an Inquest. At the Inquest, Judge Robert Deehl found that Hart was not criminally liable. The State Attorney's Office closed the file, and the file, including all police reports, sworn statements, and other evidence, became a public record before Plaintiffs instituted this action.

Notwithstanding the Dade County State Attorney's Office's investigation of the shooting and the Inquest which found that Hart was not criminally liable, Plaintiffs' counsel concluded that Hart may be civilly liable. Plaintiffs' counsel states that he retained Kenneth Harms, former Police Chief of the City of Miami Police Department, to review documents contained in the State Attorney's Office's file which were the subject matter of the Inquest, and that counsel reviewed the same. That only after reviewing the file and all other evidence, and consulting with Kenneth Harms, did counsel decide to file this action.

### PROCEDURAL HISTORY

Plaintiffs[4] filed their original Complaint on February 3, 1988. The Complaint as-

---

3. Defendants' version of the facts are taken solely from the Affidavit of Malcom Purow, Exhibit A to Defendants' Motion for Attorneys' Fees and Sanctions.

4. Yomaira Gutierrez, as the Personal Representative of Decedent's Estate for the benefit of Luz Gutierrez, surviving parent and Luz Gutierrez, individually.

serted claims for wrongful death pursuant to Section 768.16 *et seq.*, Fla.Stat. (the "Wrongful Death Act") and violation of Civil Rights pursuant to 42 U.S.C. § 1983, and the fourth, fifth, eighth and fourteenth amendments to the United States Constitution. Plaintiffs named as defendants Hart, the City of Hialeah, Raul Martinez and C.B. Say. Defendants Hart, Martinez, and Say were sued individually and in their official capacities.

Plaintiffs alleged that Hart acted negligently and in reckless disregard for the lives and safety of the public and of the Decedent when he shot the Decedent. Plaintiffs asserted that Decedent did not provoke the shooting in that he did not pose a life threatening hazard to Hart or any other person. Rather, Plaintiffs alleged that Hart used excessive and unjustified force against the Decedent without provocation or probable cause.

Plaintiffs also alleged that the City of Hialeah was liable for the conduct of the other Defendants under the doctrine of *respondeat superior*. Plaintiffs further alleged that the City of Hialeah, through Police Chief Say and Mayor Martinez, instituted policy and custom allowing police officers to use excessive force in apprehending suspects in situation such as the one involved in this action.

Plaintiffs also alleged that Raul Martinez as Mayor of the City of Hialeah, and C.B. Say as Chief of Police and Director of the City of Hialeah Police Department, failed to adequately train and supervise Hart and other officers, and were directly and ultimately responsible, and thus liable, for all actions taken by the City of Hialeah Police Department.

On March 29, 1988, this Court declined to exercise pendent jurisdiction over any state law claims and dismissed the wrongful death cause of action.[5] On April 4, 1988, the parties stipulated to the dismissal of the Complaint without prejudice for failure to state a claim upon which relief can be granted.

On April 25, 1988, Plaintiffs filed their First Amended Complaint.[6] On July 1, 1988, this Court granted both Defendants' Motion to Dismiss Count Two of the Amended Complaint and Motion for More Definite Statement, and ordered Plaintiffs to set forth more particular facts. Plaintiffs failed to do so and on December 1, 1988, this Court ordered Plaintiffs to show cause why their case should not be dismissed for lack of prosecution, for failure to file a more definite statement, and for failure to serve process upon Defendant Say.

On December 29, 1988, this Court sanctioned Plaintiffs' counsel pursuant to Rule 11, Fed.R.Civ.P., for the untimely filing of their more definite statement. This Court found that "Plaintiffs have deliberately misrepresented facts in an effort to excuse their willful disregard of this Court's authority."

On January 3, 1989, Plaintiffs filed their Second Amended Complaint.[7] On January 5, 1989, Defendants filed a Motion to Strike Certain Paragraphs of the Second Amended Complaint. On January 18, 1989, Plaintiffs's counsel requested an extension of time to respond to Defendants' Motion. This Court granted this extension based on Plaintiffs' counsel's representation that he was "attempting to consult with this clients concerning a possible disposition of this case." On February 1, 1989, Plaintiffs' counsel requested a second extension and

---

5. In holding that the concept of *respondeat superior* was only applicable to the negligence count of Plaintiffs' Complaint and not the Section 1983 count, this Court found that consideration of the wrongful death claim in conjunction with Plaintiffs' civil rights' claims would lead to jury confusion.

6. Notwithstanding this Court's Order of March 29, 1988, Plaintiffs realleged in their First

Amended Complaint a claim for negligence, and asserted the doctrine of *respondeat superior* in their Section 1983 claim.

7. Notwithstanding this Court's Order of March 29, 1988, holding that the doctrine of *respondeat superior* is inapplicable to Section 1983 actions, Plaintiffs continued to assert this doctrine in their Section 1983 claim.

stay of this action because he was unable to contact his clients. Plaintiffs' counsel advised this Court that he wished to "discuss important pending matters with Plaintiffs which bear on the disposition of this case, or ultimately result in undersigned counsel's withdrawal as Plaintiffs' counsel as warranted by these circumstances." This Court granted his request.

On March 20, 1989, Plaintiffs filed a Motion for Leave to File Notice of Voluntary Dismissal which this Court granted on April 6, 1989. This Court retained jurisdiction over the parties and the subject matter to rule on any motions by Defendants seeking relief against Plaintiffs and/or Plaintiffs' counsel pursuant to Rule 11 or any other appropriate provisions of law. On June 2, 1989, Plaintiffs filed their Notice of Voluntary Dismissal. On July 17, 1989, Defendants filed a Motion for Attorneys' Fees and Sanctions pursuant to 42 U.S.C. § 1988 and Rule 11, Fed.R.Civ.P.

## CONSTITUTIONALITY OF A POLICE OFFICER'S USE OF DEADLY FORCE IN SELF–DEFENSE

■ The central issue in this action was the constitutionality of Defendants' conduct, specifically, whether Officer Hart was justified in using deadly force. It is well established that a police officer may use of deadly force in self-defense. *O'Neal v. DeKalb Co., Ga.*, 850 F.2d 653 (11th Cir.1988); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Since at least 1985, the United States Supreme Court has recognized that to declare such defensive action unreasonable would "severely hamper effective law enforcement." In *Garner*, the United States Supreme Court held that:

> [w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officers or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious

physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

471 U.S. at 11–12, 105 S.Ct. at 1701. Hence, if Officer Hart's use of deadly force was justified, no cause of action would lie under either Section 1983 or the Wrongful Death Act, nor would the custom or the policy with respect to Officer Hart's conduct be a constitutional violation, even if that custom or policy was the direct cause of his conduct.

## DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND SANCTIONS

■ Defendants assert in their Motion for Attorneys' Fees and Sanctions that this action was frivolous from the outset and was instituted solely to harass Defendants and coerce a settlement. Defendants maintain that Plaintiffs' counsel failed to conduct a reasonable prefiling inquiry as required by Rule 11 to determine that this action was well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. This Court agrees in part.

Defendants argue, and this Court agrees, that Officer Hart was justified in using deadly force. The facts *now* before the Court conclusively establish that Officer Hart was protecting his life and the lives of innocent bystanders. Hence, because the liability of the other Defendants is derivative, they could neither have committed a constitutional infraction. *Clark v. Evans*, 840 F.2d 876, 882 n. 7 (11th Cir.1988); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985).

This Court is of the opinion that this action was frivolous from the outset as to Defendants City of Hialeah, Raul Martinez, and C.B. Say. However, this Court finds that justiciable issues of fact existed as to whether Officer Hart may be civilly liable at the time the Complaint and the two Amended Complaints were filed. Accordingly, for reasons more fully set forth below, this Court finds that only Defendants Say, Martinez and the City of Hialeah are entitled to an award of attorneys' fees and costs.

## Rule 11

Rule 11, Fed.R.Civ.P., imposes affirmative duties upon attorneys and *pro se* litigants.[8] Upon signing a pleading, motion or other paper, an attorney certifies that they: (1) conducted a reasonable prefiling inquiry into the facts that support the pleading, motion or other paper; (2) conducted a reasonable inquiry into the law such that the paper embodies existing law or a good faith argument for the extension, modification, or reversal of existing legal principles; and (3) have not interposed the paper for any improper purpose. Fed.R. Civ.P. 11; *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 874 (5th Cir.1988). A pleading, motion or other paper may not be signed first and the basis investigated thereafter. Rule 11 requires the signer to first "stop and think."

### standard of review

Whether an adequate investigation into the facts and law has been made is judged under a standard of objective reasonableness, *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985), except that a Court may inquire into the signer's actual knowledge and motivation to determine whether a paper was interposed for an improper purpose. The certification by the signer is tested as of the time the pleading, motion or other paper is signed.

### analysis

### Defendants Say, Martinez and City of Hialeah

### Section 1983 claims

This Court finds that Plaintiffs' counsel failed to conduct a reasonable prefiling inquiry into the law before bringing claims for violation of Section 1983 against Defen-

dants Say, Martinez and the City of Hialeah. The law is well established that an action pursuant to Section 1983 cannot be based upon the theory of *respondeat superior.* *Monell v. Department of Soc. Serv. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Fundiller,* 777 F.2d 1436. A plaintiff must establish that a supervisor (i.e., Chief of Police Say and Mayor Martinez) actually exercised control over the officer in connection with the conduct at issue (i.e., shooting). *See Gilmere v. City of Atlanta, Ga.,* 774 F.2d 1495 (11th Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654, 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986) (holding that supervisors were not liable for the shooting death of suspect where Plaintiff failed to establish that supervisors actually exercised control over the officer in connection with the shooting); *Young v. City of Killeen, Tex.,* 775 F.2d 1349 (5th Cir.), *reh'g denied,* 778 F.2d 790 (1985) (holding that a police chief was not liable for an officer's fatal shooting of a drug suspect due to the lack of the police chief's personal involvement in the shooting); *Howard v. Koch,* 575 F.Supp. 1299 (E.D.N.Y. 1982) (failure to allege personal involvement by the Mayor warrants a dismissal of the claims); *Quinones v. Durkis,* 638 F.Supp. 856 (S.D.Fla.1986) (holding that a plaintiff must prove Sheriff breached a duty imposed by law or was personally involved in the incident and such acts caused the incident). Hence, for Plaintiffs to have maintained a claim for violation of Section 1983 against Defendants, Plaintiffs had to establish more than merely the right to control Officer Hart's conduct.

Plaintiffs' Section 1983 claims against Defendants Say, Martinez, and City of Hialeah were not well-grounded in fact. Plain-

---

8. Rule 11, Fed.R.Civ.P., provides in pertinent part: The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

tiffs' original Complaint, and the First and Second Amended Complaints, contained no facts whatsoever to support Plaintiffs' conclusory allegations that Defendants instituted policy and custom permitting officers to use excessive force in the apprehension of suspects. Such conclusory allegations alone are insufficient to state a claim for relief against these Defendants. *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194 (7th Cir.1985); *Cohen v. Illinois Inst. of Tech.*, 581 F.2d 658 (7th Cir.1978).

■ The only possible basis for Plaintiffs' allegations that Defendants instituted improper custom and policy would be Officer Hart's actions surrounding the shooting. However, a plaintiff must allege more than merely an isolated or single act of an unconstitutional deprivation pursuant to a custom or policy. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791, *reh'g denied*, 473 U.S. 925, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985). Rather, a plaintiff must allege and establish a series of incidents or a pattern of misconduct pursuant to such a policy or custom. *Hossman v. Blunk*, 784 F.2d 793 (7th Cir. 1986); *Alvarez v. City of Chicago*, 633 F.Supp. 1361 (N.D.Ill.1986). Plaintiffs failed to do this.

Based on the foregoing, this Court finds that Plaintiffs' counsel failed to conduct a reasonable prefiling inquiry into the facts and law before bringing claims for violation of Section 1983 against Defendants Say, Martinez, and the City of Hialeah. Hence, Plaintiffs' Section 1983 claims against said Defendants were not well-grounded in fact and warranted by law, or a good faith argument for the extension, modification, or reversal of existing law.

### negligence claims

■ Secondly, this Court finds that Plaintiffs' claims for negligence against Defendants Say, Martinez and the City of Hialeah as set forth in the original and First Amended Complaint were not well-grounded in fact. Rather, Plaintiffs claims for negligence consisted entirely of conclusory allegations, which alone are insufficient to state a claim for relief. A claim must be supported by material facts. These underlying facts must either be ad-

missible evidence, or at least facts that will lead to admissible evidence. Accordingly, this Court finds that Plaintiffs' counsel failed to conduct a reasonable prefiling inquiry into the facts, if any, to support Plaintiffs claims for negligence against these Defendants, and that said claims were not well-grounded in fact.

### Defendant Hart

■ Thirdly, this Court finds that justiciable issues of fact existed as to whether Officer Hart was civilly liable. Prior to commencing this action, Plaintiff reviewed all the documents contained in the State Attorney's Office's file regarding the shooting. In addition, Plaintiff's counsel consulted Kenneth Harms, former Police Chief of the City of Miami Police Department, to determine whether Officer Hart used excessive force. By affidavit, Harms stated that:

> it was my opinion at the time of my review of all relevant matters, that a lawsuit should be filed since certain issues had been raised in inconsistencies in the statement of Officer Hart and the physical evidence, and in my opinion, the officer may not have exercised proper police conduct in reacting to the subject situation.

Affidavit, p. 3.

Although this Court finds that the evidence *now* before the Court conclusively establishes that Officer Hart was justified in using deadly force, this Court must test Plaintiffs' counsel's certification as of the time he signed the complaints. The advisory committee's note cautions courts to avoid using the wisdom of hindsight in determining whether the signer's inquiry was reasonable. In addition, the drafters warned that the outcome of the litigation should not have any bearing on whether Rule 11 was violated. Upon careful review of the complaints filed in this action, and of the record, this Court finds that at the time Plaintiffs counsel filed the complaints, justiciable issues of fact existed whether Officer Hart may be civilly liable.

### sanctions

This Court finds that Plaintiffs' counsel, rather than the individual Plaintiffs, should

be sanctioned. The record reveals that Plaintiffs' counsel failed to conduct a reasonable prefiling inquiry into the facts and law to support claims for violation of Section 1983 and negligence against Defendants Say, Martinez and the City of Hialeah. The record clearly reveals that Plaintiffs' counsel persisted in advancing these claims while on notice that these claims were not well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. In short, rather than "stopping and thinking," Plaintiffs' counsel simply added these names to the complaints without any factual or legal foundation. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion is GRANTED IN PART AND DENIED IN PART, and Plaintiff's counsel shall be required to compensate Defendants C.B. Say, Raul Martinez, and the City of Hialeah, for attorneys' fees and costs expended in defending this action. Counsel for Defendants shall submit to this Court an Affidavit detailing the amount of costs incurred, and the number of hours spent, in defending this action, and the amount of attorneys' fees billed said Defendants.

DONE AND ORDERED.